UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jose Luis Gutierrez, | Case No. 20-cv-398 (NEB/DTS) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Jodi Harpstead, DHS Commissioner, | |
| Respondent. | |

This matter is before the Court on respondent Jodi Harpstead's second motion to dismiss the petition for a writ of habeas corpus of petitioner Jose Luis Gutierrez. *See* Dkt. No. 40. For the reasons explained below, it is recommended that the motion to dismiss be granted and that the claims in the petition be denied with prejudice.

## BACKGROUND

Gutierrez is a client of the Minnesota Sex Offender Program (MSOP). In 2018, Gutierrez was found in Minnesota state court to be a sexually dangerous person and a sexual psychopathic personality following a lengthy history of criminal sexual offenses. *See Matter of Civil Commitment of Gutierrez*, No. A18-1290, 2018 WL 6729833, at *1-2 (Minn. Ct. App. Dec. 24, 2018). As a result, Gutierrez was civilly committed at MSOP. The Minnesota Court of Appeals affirmed the order of commitment, *see id.*, and the Minnesota Supreme Court declined review of the case.

In 2020, Gutierrez launched a two-pronged attack on his commitment. One of those attacks came in state court. Unlike prisoners convicted of a criminal offense, whose detentions typically carry a defined end-date, civil detainees at MSOP indefinitely remain in custody until "the committed person is capable of making an acceptable adjustment to

open society, is no longer dangerous to the public, and is no longer in need of treatment and supervision." Minn. Stat. § 253D.31. A person detained at MSOP who believes he meets those conditions may file a petition for discharge with a statutorily established body known as the Special Review Board. Minn. Stat. § 253D.27, subd. 2. A petition for discharge is not a challenge to the legality of the initial commitment proceedings, but rather a challenge to the appropriateness of ongoing civil detention, with the detainee arguing that because he no longer poses a threat to others, he should be released from MSOP.

Second, Gutierrez filed the petition for a writ of habeas corpus that commenced this action. *See* Petition [Dkt. No. 1]. The habeas petition, unlike the discharge petition, mostly challenged the legality of the initial commitment proceedings, with Gutierrez arguing, among other things, that he was denied effective assistance of counsel during those proceedings and that the state courts were biased against him. But Gutierrez also suggested (very vaguely) in his habeas petition that he was not a sexually dangerous person or a sexual psychopathic personality. *See* Petition at 3. This suggestion amounted to both an attack on the initial proceedings—if Gutierrez was not sexually dangerous or psychopathic, then he should not have been committed—and an attack on the legality of Gutierrez's ongoing detention akin to that raised in the discharge petition (that is, regardless of the legality of the initial detention, Gutierrez should no longer be detained if he is no longer dangerous).

Almost immediately after Gutierrez filed his habeas petition, this matter was stayed as related to then-ongoing class-action litigation brought by each client of MSOP regarding the legality of the operations of that facility. *See* Dkt. No. 6 (*citing* Karsjens v.

Piper, No. 11-CV-3659 (D. Minn.)). While this proceeding sat in Limbo, the state-court proceedings on Gutierrez's discharge petition continued apace. By the time the stay was lifted in this matter in April 2022, the Special Review Board had denied Gutierrez's petition for discharge, and Gutierrez had filed an appeal with the judicial appeal panel for a rehearing and reconsideration of the Special Review Board's decision.

When the Court lifted the stay in this matter, respondent filed a motion to dismiss the petition, contending that Gutierrez had failed to exhaust available state remedies, *see* 28 U.S.C. § 2254(b), and that the claims in the petition in any event lacked merit.[1] But at least one of those claims—that Gutierrez was no longer dangerous and therefore should no longer be committed—was in the process of being exhausted through Gutierrez's appeal of the denial for discharge in state court. Dismissal of Gutierrez's habeas petition at that time on exhaustion grounds, even dismissal without prejudice, would have imperiled Gutierrez's ability to ever seek federal habeas relief on the claim then being exhausted in the state courts. Accordingly, the Court imposed a second stay in this proceeding, this time pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), until the state-court discharge proceedings (including all appeals) had fully concluded. *See* Dkt. No. 34.

Unknown to the Court was that, on the day prior to the second stay being entered, Gutierrez had already filed a motion to voluntarily withdraw his petition for rehearing and reconsideration of the denial of the petition for discharge. *See* Dkt. No. 35-2. The motion to withdraw was granted by the judicial appeal panel. *See* Dkt. No. 35-1. With no state-court proceedings relevant to the habeas petition ongoing, the stay in this matter was

---

[1] Respondent should not have filed a motion to dismiss but rather (as was directed) an answer, especially as the motion included both procedural defenses and merits-based defenses. *See Baker v. Pugh*, No. 23-CV-1520, Dkt. No. 11 (D. Minn. Nov. 3, 2023).

3

again lifted, and respondent renewed the argument that Gutierrez had failed to exhaust available state-court remedies for his claims. Gutierrez has filed a response to the motion to dismiss, and this matter is now ready for review.

## ANALYSIS

This case is largely controlled by § 2254(b):

> (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>>> (B)(i) there is an absence of available State corrective process; or
>>>
>>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

The exhaustion requirement of § 2254(b) is intended to provide "the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations and quotations omitted). "A

4

petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999).

Only once has Gutierrez ever presented to the Minnesota Supreme Court any claim related to his ongoing civil commitment. Seeking review from the initial commitment order, Gutierrez petitioned the Minnesota Supreme Court on the grounds that the evidence was insufficient to establish that, at the time of the commitment, he was either a sexually dangerous person or a sexual psychopathic personality. *See* App'x at 14-18 [Dkt. No. 23]. Insofar as § 2254(b) requires Gutierrez to "fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review)," *Baldwin*, 541 U.S. at 29, he could only have done so with respect to this single claim.

This Court will circle back to this claim, but for now, it is worth noting that the vast majority of Gutierrez's petition has nothing to do with whether there was sufficient evidence to support his initial commitment. Instead, Gutierrez's claims relate overwhelmingly to the questions of whether he was afforded effective assistance of counsel during the commitment proceedings and whether those proceedings were conducted in an unbiased manner. Gutierrez also mentions briefly in his habeas petition that he believes his civil commitment to be "a violation of double jeopardy and ex post facto clauses of the United States Constitution." Petition ¶ 14a. Nowhere does Gutierrez's lone petition for review with the Minnesota Supreme Court so much as hint at any of these claims for relief, and so § 2254(b) would seem plainly to preclude federal habeas review of those claims.

Gutierrez's nevertheless offers three arguments for why these claims should not be denied pursuant to § 2254(b).  First, Gutierrez argues that all state-court proceedings have now concluded and that his claims therefore are now as exhausted as they will ever be.  Second, Gutierrez argues that § 2254(b) does not apply to his claims because the Minnesota does not provide a procedural pathway for presenting these claims in the state courts.  *See* 28 U.S.C. § 2254(b)(1)(B)(i) (excusing the exhaustion requirement where "there is an absence of available State corrective process").  Third, Gutierrez argues—somewhat in tension with his second argument—that it would have been futile for him to pursue these claims in the state courts because those courts would have found his claims to be without merit, with Gutierrez concluding that he should therefore be permitted to skip that step of the process and proceed directly to federal habeas review.

There is a kernel of truth in Gutierrez's first argument that his claims are "exhausted" insofar as there is nowhere in state court left for him to go at this stage.  "If a state court would dismiss . . . claims for their procedural failures, such claims are technically exhausted because, in the habeas context, 'state-court remedies are . . . "exhausted" when they are no longer available, regardless of the reason for their unavailability.'"  *Shinn v. Ramirez,* 596 U.S. 366, 378 (2022) (quoting *Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006)).  If Gutierrez were to attempt to present his habeas claims in the state courts now, the state courts would reject those claims for not having been presented on direct review of the commitment order.  Under the doctrine of procedural default, "federal courts generally decline to hear any federal claim that was not presented to the state courts 'consistent with the State's own procedural rules.'"  *Id.* (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)).  That Gutierrez has missed his

opportunity to fairly present his claims to the Minnesota Supreme Court "does not act as a get-out-of-exhaustion-free card." *Abdillahi v. Miles*, No. 16-CV-0963 (JNE/HB), 2017 WL 4047859, at *8 (D. Minn. June 29, 2017). After state procedural rules foreclose a petitioner's fair presentation of claims, those claims become procedurally defaulted on federal habeas review as well.

Procedural default also applies to any claim presented through Gutierrez's 2020 discharge petition. Rather than pursue each level of appeal in the Minnesota courts, Gutierrez opted to voluntarily dismiss his request that the denial of his petition for discharge be reconsidered. This ended the state-court appellate process for Gutierrez's claim that his condition had sufficiently improved by 2020 that he should be released. That claim is now forever lost to him in state court—and, under the procedural-default doctrine, in federal court as well.[2]

Gutierrez's second argument—that he could not have fairly presented constitutional attacks on the legality of the initial commitment proceedings—is simply false. To be sure, Gutierrez is correct that his 2020 discharge petition was not an appropriate procedural vehicle for those claims and that the Special Review Board could not have reviewed his allegations of constitutional error. But Gutierrez had available to

---

[2] Respondent suggests that Gutierrez has not procedurally defaulted this claim because he can again seek review of his detention from the Special Review Board. Not quite. The claim in the 2020 discharge petition relates to the appropriateness of Gutierrez's custody in 2020. That claim is now procedurally defaulted. If Gutierrez files a new petition for discharge with the Special Review Board, that petition will relate to the appropriateness of Gutierrez's detention at the time that the new discharge petition is filed. This would be a different claim, and one that could not have been raised in the state courts previously (Gutierrez could not argue in 2020 that his condition in 2023 or later will have improved to the point that his custody had become unlawful).

7

him another procedural vehicle: his direct appeal from the commitment proceedings.[3] Contrary to the suggestion in Gutierrez's response to the motion to dismiss, detainees may raise constitutional challenges to their commitment proceedings in Minnesota state court on direct appeal. *See, e.g.*, *In re Civil Commitment of Eggert*, No. A09-0502, 2009 WL 2928775, at *6-7 (Minn. Ct. App. Sept. 15, 2009) (reviewing claim of ineffective assistance of trial counsel). The state courts made available to Gutierrez an adequate corrective process; Gutierrez simply did not avail himself of that process with respect to the claims raised in the habeas petition.

Third, Gutierrez argues that even if a procedural vehicle were available to him as a formal matter, the state courts were so unlikely to grant him relief on his claims that any attempt to procure relief would have been a waste of time. The Supreme Court has explained that the exhaustion requirement of § 2254(b) does not preclude habeas relief where "the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (per curiam). Gutierrez, like many habeas litigants before him, takes too expansive a view of this futility exception. A habeas petitioner is not excused from raising claims in state courts just because it is overwhelmingly likely that he will lose on the merits of those claims. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982); *Parker v. Kelchner*, 429 F.3d 58, 63 (3d Cir. 2005) (surveying cases from other jurisdictions and noting "the exhaustion requirement is not

---

[3] In addition, when premised on newly discovered evidence, a "person who is indeterminately civilly committed" may also "bring an ineffective-assistance-of-counsel claim under Minn. R. Civ. P. 60.02" outside of that rule's one-year limitations window. *See Matter of Commitment of Newman*, No. A18-1691, 2019 WL 3293793, at *3 (Minn. Ct. App. July 22, 2019). The factual predicates of Gutierrez's ineffective-assistance claims were necessarily known to him at the time he filed his federal habeas petition in January 2020; he could not have sought relief on the claims otherwise. Accordingly, it is now too late for him to present those claims to the state courts through Rule 60.02.

excused merely because a petitioner's claim will likely be denied on the merits in state court."). Rather, as made clear by *Duckworth*, the futility of raising the claims must be related to the deficiency of the corrective *process* offered by the state. *See also Greene v. Ellison*, No. 23-CV-0155, 2023 WL 4409858, at *2 (D. Minn. May 23, 2023); *Traylor v. Pugh*, No. 22-CV-1266, 2022 WL 2302695, at *4 (D. Minn. June 27, 2022). There is absolutely no reason for this Court to believe that the state courts would not have provided Gutierrez with an adequate corrective process through which to assert the claims that he failed to raise earlier.[4] That Gutierrez may not have succeeded on those claims in the state courts does not mean that the state-court process would have been defective.

As explained above, Gutierrez has only ever presented one claim to the Minnesota Supreme Court—a sufficiency-of-the-evidence claim related to the initial commitment proceedings. No other claim presented in the habeas petition has been fairly presented to the Minnesota state courts, and Gutierrez's reasons for not having fairly presented those claims are insufficient to evade the § 2254(b) exhaustion requirement. The bulk of the habeas petition should therefore be denied due to procedural default.[5]

---

[4] Gutierrez does argue that unspecified delays in adjudication rendered the state-court processes futile, but the argument is bizarre. Gutierrez's civil-commitment trial occurred in April 2018, and he was ordered civilly committed in June 2018. The Minnesota Court of Appeals affirmed the commitment order in December 2018, and the Minnesota Supreme Court declined review in February 2019. Very little time elapsed between when Gutierrez's claims would have become available to him and when the Minnesota courts acted on the claims that Gutierrez presented.

[5] Gutierrez also asserts in a conclusory fashion that he is actually innocent and therefore should be permitted to proceed even if his claims are defaulted. Gutierrez is correct that a threshold showing of actual innocence can overcome procedural limitations on habeas relief, including procedural default*, see Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005), but never does Gutierrez make anything resembling the necessary threshold showing. It is not enough simply to assert nakedly that the petitioner is actually innocent. *See, e.g.*, *Carney v. Fabian*, 441 F. Supp. 2d 1014, 1029 (D. Minn. 2006).

This leaves only that lone exhausted sufficiency-of-the-evidence claim. The claim appears only once in Gutierrez's habeas petition, and even then only barely. Ground One of the habeas petition relates overwhelmingly to the issue of whether Gutierrez was provided effective assistance and whether the procedures employed by the trial court were consistent with due process. But the subtitle to Ground One provided by Gutierrez is that "[t]he Evidence Only Supports the District Court's Determination That Appellant is a Sexually Dangerous Person and a Sexually Psychopathic Personality for Punitive Intent." Read literally, this would seem an acknowledgement that the evidence was sufficient, but Gutierrez appears to have been cribbing from the petition for review filed by his attorney in 2018, in which the same misstatement was made. *See* App'x at 14 ("[t]he district court properly determined that appellant meets the statutory criteria for commitment as both SDP and SPP."). His attorney could only have meant the opposite of what was written—the petition for review would have made no sense otherwise, as the challenge to the evidence was the only claim raised there—and this Court similarly interpreted Gutierrez as presenting the sufficiency-of-the-evidence claim in the habeas petition. *See* January 20, 2023 Report and Recommendation at 3 [Dkt. No. 33] ("Respondent seems to acknowledge that Gutierrez has exhausted one claim for relief that is presented in the habeas petition: whether the evidence presented at his civil-commitment proceedings was sufficient to establish the legality of that commitment.").

Despite being on notice that the Court regarded this claim as a live issue in these habeas proceedings, respondent never squarely addresses the sufficiency-of-the-evidence claim in the pending motion to dismiss. For sake of thoroughness, respondent should have done so and should have submitted a transcript of the civil-commitment

proceedings so that the Court could conduct a thorough evaluation of that claim on the merits.[6] But Gutierrez, in turn, does not present any arguments regarding this claim in his response to the motion to dismiss, suggesting that the claim—to the extent that it was ever raised at all—has now been abandoned.[7]

In any event, Rule 2(c)(3) of the Rules Governing Section 2254 Cases in the United States District Courts requires that a habeas petition "state the facts supporting each ground." Never does the habeas petition submitted by Gutierrez do this with respect to the sufficiency-of-the-evidence claim; indeed, it is largely the failure to plead a single fact supporting his claim that has led to the confusion over whether the claim was raised at all. Thus, even if the claim was pleaded, it was not sufficiently pleaded, and it is on that basis that the Court recommends the claim be denied.

Accordingly, this Court recommends that Gutierrez's habeas petition be denied with prejudice in its entirety. Because this Court does not believe the basis upon which denial of the habeas petition is recommended to be fairly debatable, it is further recommended that a certificate of appealability not be issued in this matter. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

---

[6] Respondent points out that "Petitioner did not provide the civil commitment trial transcript," Resp. Mem. at 11 n.5 [Dkt. No. 41], but it was respondent's job to do this, not Gutierrez's job, *see* Rule 5(c), Rules Governing Section 2254 Cases in the United States District Courts.

[7] Gutierrez does argue that the actual-innocence exception should provide a gateway for reviewing his defaulted claims, but actual innocence and sufficiency of the evidence are not the same thing. *See Hayes v. Battaglia*, 403 F.3d 935, 940 (7th Cir. 2005) (J. Flaum, concurring). Moreover, as explained above, Gutierrez's invocation of the actual-innocence exception is entirely conclusory.

11

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT:

1. The motion to dismiss of respondent Jodi Harpstead [Dkt. No. 40] be GRANTED.

2. The petition for a writ of habeas corpus of petitioner Jose Luis Gutierrez [Dkt. No. 1] be DENIED WITH PREJUDICE.

3. No certificate of appealability be issued.


Dated: November 9, 2023                    s/David T. Schultz
                                           DAVID T. SCHULTZ
                                           U.S. Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).